UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ARUN KOTIAN,<br><br>                             Plaintiff,<br><br>-against-<br><br>MORRISON MANAGEMENT SPECIALISTS and COMPASS GROUP NORTH AMERICA (a/k/a COMPASS GROUP USA).<br><br>                             Defendants. | Civil Case No.: 1:23-cv-<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Arun Kotian ("Plaintiff" or "Mr. Kotian"), by and through his attorneys, The Boyd Law Group, PLLC, upon his knowledge and belief, and as against Defendants Morrison Management Specialists ("Morrison") and Compass Group North America (a/k/a Compass Group USA) ("Compass Group"), (collectively, the "Defendants"), alleges as follows:

## PARTIES

1. Plaintiff is an adult male of Indian descent who at all times relevant herein resided in Westchester County, New York.

2. Plaintiff was employed by Defendants beginning on or about April 2017, through his retaliatory termination which took place on or about December 14, 2019.

3. At all relevant times to the allegations herein, Plaintiff worked at Defendants' location at Waterbury Hospital located at 64 Robbins Street, Waterbury, Connecticut 06708.

4. Upon information and belief, Defendant Morrison is a privately held company.

5. Upon information and belief, Defendant Morrison is a food and nutrition service provider for healthcare, senior living, and retirement communities.

6. Upon information and belief, Morrison conducts business throughout the United

States.

7. Upon information and belief, Morrison's headquarters is located at 400 Northridge Road, Suite 600, Atlanta, Georgia 30350.

8. Upon information and belief, Defendant Morrison is a subsidiary of Compass Group.

9. Upon information and belief, Compass Group is a privately held company and operates in the United States of America and Canada.

10. Compass Group is part of the parent company Compass Group PLC – a company with headquarters in Chertsey, Surrey, United Kingdom, and with operations across the world.

11. Upon information and belief, Compass Group is a food and support services company across many core sectors such as business, healthcare and seniors, sports, and education.

12. Upon information and belief, Compass Group's headquarters office address is 2400 Yorkmont Road, Charlotte, North Carolina 28217.

13. Nancy Roux ("Roux") was Plaintiff's manager from 2018 until her termination in 2019.

14. Upon information and belief, Roux identifies as a white, American woman.

15. Cheryl Robacznski ("Robacznski") was Morrison's Clinical Nutrition Manager.

16. Upon information and belief, Robacznski identifies as a white woman.

17. Roux and Robacznski each had substantial control over Plaintiffs' working conditions, and over the unlawful policies and practices alleged herein.

## NATURE OF THE ACTION

18. This is a civil action brought by Plaintiff against Defendants for, *inter alia*, unlawful employment discrimination, harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981 *et seq.*, and the Family and Medical Leave Act of 1993 ("FMLA"). Plaintiff seeks all permissible damages and remedies, including but not limited to monetary, compensatory, and punitive damages.

19. Defendants' discriminatory actions were intentional, knowing, willful and wanton and/or showed a reckless disregard for the law.

20. As a result of Defendants' conduct, Plaintiff Kotian suffered from extreme emotional stress and anxiety.

21. Defendants also failed to provide any accommodations that would have allowed Plaintiff to continue to work, firing him without notice.

## **JURISDICTION & VENUE**

22. This Court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, cited as 42 U.S.C. § 2000e ("Title VII").

23. This Court has personal jurisdiction over all the parties in this Complaint, and venue is proper pursuant to 28 U.S.C. § 1391(b).

24. Defendant Morrison and Compass Group employ over fifty thousand (50,000) people nationwide.

25. Plaintiff timely filed a complaint with the Connecticut State Commission on Human Rights and Opportunities ("CHRO") on or about October 7, 2020.

26. Plaintiff's complaint with CHRO was concurrently filed with the Equal Employment Opportunity Commission ("EEOC").

27. Plaintiff received a probable cause determination as to discrimination and retaliation from the CHRO on or about February 10, 2022.

28. Plaintiff received a "Release of Jurisdiction" form from CHRO, attached hereto as Exhibit A.

29. Plaintiff furthermore received a Notice of Right to Sue from the EEOC on or about December 22, 2022 which is attached hereto as Exhibit B.

30. Thus, Plaintiff has exhausted all administrative remedies and timely filed this Complaint within ninety (90) days of the receipt of Exhibit B.

## FACTS AND ALLEGATIONS

31. Plaintiff, an Indian citizen, moved to the United States of America in 2014.

32. Plaintiff worked in the food management industry before joining Defendant Morrison.

33. Plaintiff commenced working for Defendants in or about April 2017, at the Westchester Medical Center in Valhalla, New York.

34. In August of 2018, Plaintiff applied for a Retail Manager position and worked for a couple of weeks as a temporary employee.

35. In September 2018, Defendants extended an official offer of employment as a Retail Manager to Plaintiff.

36. When Plaintiff commenced the Retail Manager position, he worked in the Waterbury Hospital located at 64 Robbins Street, Waterbury, Connecticut 06708.

37. Initially, Plaintiff received positive feedback and performance reviews.

38. This continued until Defendants began a campaign of harassment starting in

December 2018, when Mr. Kotian's son was born.

39. Mr. Kotian's son was born in December 2018.

40. At that time, Plaintiff took parental leave to care for and bond with his son and returned to work in January 2019.

41. Roux resented this leave and took aim at Plaintiff's ability to take this leave in violation of law.

42. Particularly, after that leave, Mr. Kotian's working relationship with Roux became increasingly contentious and she denigrated him based on his race and national origin.

43. Indeed, shortly after his return from leave, Roux began complaining about Plaintiff's work, criticizing him on small matters, and setting burdensome work expectations targeting him only.

44. Moreover, Roux repeatedly disrespected Plaintiff in front of his colleagues and expected him to cover responsibilities outside of his department.

45. Roux clearly set Plaintiff aside for special and disparate treatment compared to other employees being that Mr. Kotian was, upon information and belief, the only non-white Retail Manager of the Company at the time.

46. In response to this sudden, aggressive behavior Plaintiff complained to Chris LeFave, Morrison's Regional Director, in addition to raising these concerns with Human Resources ("HR").

47. On or about February 25, 2019, Plaintiff complained to HR by phone and e-mail, explaining that he felt threatened at work because of the increasingly hostile work environment.

48. The same day Plaintiff complained to HR, Roux informed him that she was

extending the probationary period of his employment for an additional sixty (60) days.

49. The quick and intimidating response from Roux led Plaintiff to believe that HR informed her of his complaint and that she was retaliating against him.

50. Shortly after Roux extended Plaintiff's probationary period, Plaintiff complained to HR again, stating that Roux extended his probation because of his previous complaint about her conduct.

51. However, HR informed Mr. Kotian that it had closed its "investigation" into the matter only three (3) days later, on February 28, 2019, and that it would be unable to do anything about Roux and her hostile behavior.

52. The short time in between Mr. Kotian's complaint and this statement led him to believe that HR did not conduct a thorough investigation into his complaints — if one was conducted at all.

53. Despite these complaints, Plaintiff continued to try working collaboratively and often spoke with Roux and Robacznski.

54. During these conversations, Roux, apparently emboldened by Morrison's anemic HR response to Plaintiff's earlier complaint, explained that Plaintiff was on a "thin line" because he took family leave.

55. Furthermore, Roux stated that Mr. Kotian would be "miserable" at work if he kept making complaints to HR – clearly discouraging such protected activity.

56. Naturally, Mr. Kotian understood these comments as threats, which meant that Roux would place him on a performance improvement plan or terminate him if he took leave again or continued to complain.

57. Plaintiff explained to Roux that he had only taken leave to care for his son – leave that he was entitled to by law.

58. Roux obstinately discouraged Plaintiff's further leave requests and was antagonistic in any discussion of such requests.

59. In one of these conversations, Robacznski piled on, claiming that Mr. Kotian was not worth what Morrison was paying him and explained that she did not take family leave herself when her husband was sick.

60. Robacznski asserted that she had "shit too" and did not "come and whine about it."

61. These chilling and harsh declarations were meaningfully indicative of Roux's and Robzcnski's discriminatory animosity towards the Plaintiff.

62. On or about February 28, 2019, shortly after Mr. Kotian's Complaints to HR, Roux told Plaintiff that he was a "troubled person."

63. During that conversation, when Roux knew Mr. Kotian was going to be able to take additional leave, Roux said to him "I may have lost this battle but let me tell you I'm gonna win the war because I'm an American and Americans always win the war."

64. There is a recording of Roux making this discriminatory statement.

65. This was clearly a discriminatory statement, coming from a white American and directed towards an Indian immigrant; this statement made Mr. Kotian fear even more for the security of his position with Defendants and made him feel targeted at work because of his race and national origin.

66. Indeed, upon information and belief, Mr. Kotian was the only manager at his level

who was a person of color and was the only manager subjected to both private and public disrespect and discrimination from Roux.

67. Roux's aggressive and discriminatory animus followed Plaintiff for the rest of 2019 as he faced a slew of adverse employment actions and increasingly hostile behavior from Roux.

68. Plaintiff regularly reported these concerns to HR, but to no avail as HR was either indifferent to his complaints or willfully ignoring them.

69. In April 2019, for example, Roux unexpectedly asked Plaintiff to move to a smaller office that did not have a window to the outside which his previous office had.

70. Plaintiff did not wish to change offices and Roux provided no explanation for the move, but nonetheless Plaintiff told Roux that he would move the following Monday.

71. Plaintiff agreed to this change without argument because he feared further retaliation from Roux.

72. When Mr. Kotian returned to work after the weekend, he found that Robacznski had taken over his old office and that his belongings were disorganized and strewn about on the floor of the new, smaller, and windowless office.

73. Roux had apparently taken and inconsiderately moved Mr. Kotian's belongings to this new office.

74. This unprofessional action, coupled with the racist remarks, is further evidence of Roux's discriminatory animus.

75. In June 2019, after Plaintiff returned from approved family leave again to care for his son, Roux presented Mr. Kotian with a corrective action report.

76. Plaintiff again contacted HR, informing them that Roux was making up new rules and procedures just so that Morrison could terminate his employment.

77. Plaintiff unequivocally complained in an e-mail on or about June 20, 2019, noting that his "job is not secure primarily because I took FMLA."

78. Yet again, HR failed to adequately respond to this complaint.

79. In August 2019, Roux, made yet another blatantly racist statement to Plaintiff, continuing her pattern of this behavior.

80. This time Roux said to Plaintiff if you are "not happy here, you should go back to your country" and around the same time called him a "piece of shit."[1]

81. Mr. Kotian understood this patently discriminatory statement to mean that Roux wanted him to leave the United States and return to India.

82. Mr. Kotian reported this incident to HR, but HR yet again failed to respond or admonish Roux or provide any substantive rebuke or corrective action.

83. In September 2019, Roux stormed into Mr. Kotian's office demanding to know why the internally facing window of his new smaller and less private office was covered by blinds.

84. Mr. Kotian explained that he drew the blinds down for privacy while he ate his lunch.

85. Roux found this, for some reason, to be unacceptable and demanded that Mr. Kotian not use blinds in the future as it was not allowed.

---

[1] Examination of a Facebook profile that appears to be Roux's demonstrates that she follows many conservative groups. Following those groups, coupled with the proximity in time between her calling Plaintiff a "piece of shit" and telling him to go back to India curiously tracks comments made by President Trump, who, less than a year earlier, called certain underdeveloped countries "shitholes."

86. When the Plaintiff returned to work the next day, he discovered that Roux had removed the blinds – Plaintiff was, further, prohibited from reinstalling them.

87. This example, another in a long line of Roux's hostile behavior, continued to wear Plaintiff down, leading him to request and apply for numerous transfers.

88. However, any internal transfer within Morrison or Compass required approval from Roux since she was his manager.

89. Upon information and belief, Roux denied all of Plaintiff's requests to transfer.

90. In November 2019, Mr. Kotian informed Roux that he would take the remainder of his available family leave at the end of December and January to continue caring for and bonding with his son.

91. On multiple occasions before Plaintiff left, he confirmed with HR and Aetna (Morrison's family leave servicer) that he was eligible for and could take the leave.

92. Accordingly, Plaintiff took this approved leave in the middle of December 2019, and went to India with his family and newborn son.

93. During his leave, Mr. Kotian was not contacted by Roux or anyone else at Morrison, despite this usually being the case during his previous leaves.

94. Upon Mr. Kotian's return from India, he called Morrison informing them that he would return to work on January 13, 2020, as previously discussed.

95. However, on this call Plaintiff was informed that Defendants terminated his employment on December 14, 2019, for failing to return to work, notwithstanding the fact that his family leave had been approved.

96. Defendants, at no point, notified Plaintiff electronically or through a phone call of

the termination or his need to return to work - aside from a physical letter mailed to his home in the United States indicating that he was terminated.

97. Defendants' retaliatory and discriminatory conduct followed Mr. Kotian after this termination when Morrison contested his application for unemployment benefits - Morrison argued that he voluntarily left his employment.

98. It was only after Plaintiff contested this determination at a hearing that Defendant Morrison agreed not to challenge Plaintiff's entitlement to unemployment benefits.

99. The sudden termination was financially devastating for Mr. Kotian and his family.

100. Furthermore, the delay in the receipt of benefits enhanced the impact of the discriminatory and retaliatory termination.

101. Finding work during the COVID-19 pandemic was tremendously challenging and Plaintiff suffered economically for quite some time.

102. Moreover, Morrison continually refused to provide Plaintiff with a termination letter, which his wife required for an application to join her employer's dental insurance program.

103. Morrison HR's indifference throughout this process, and after Plaintiff's termination, reveals not only a failure to prevent discrimination, but also emboldened discriminatory animus following his complaints.

104. The discriminatory and retaliatory acts referenced herein are a representative sample, not an exhaustive list, of the unlawful actions by Defendants.

105. Plaintiff has suffered serious emotional distress as a result of the same and is entitled to damages as a result.

## FIRST CAUSE OF ACTION
**(Discrimination In Violation of Title VII of the Civil Rights Act of 1964)**

106. Plaintiff repeats and realleges all of the above preceding paragraphs above as though fully set forth herein.

107. Defendants intentionally discriminated against Plaintiff based upon his race, ethnicity, and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3 *et seq* by denying him equal terms and conditions of employment and ultimately terminating his employment.

108. Defendants were on notice of this discrimination and failed to properly investigate Plaintiff's claims, and discipline or otherwise discourage Roux or its employees from engaging in such conduct.

109. As a direct and proximate consequence of Defendants' intentional, unlawful, and discriminatory employment policies and practices, Plaintiff has suffered monetary damages, including, but not limited to, a loss of income, including past salary, future salary, and company-sponsored benefits.

110. As a direct and proximate consequence of Defendants intentional, unlawful, and discriminatory employment policies and practices, Plaintiff has suffered, and continues to suffer, non-monetary damages, including, but not limited to, mental and physical pain and suffering

## SECOND CAUSE OF ACTION
**(Retaliation In Violation of Title VII of The Civil Rights Act of 1964)**

111. Plaintiff repeats and realleges all of the above preceding paragraphs above as though fully set forth herein.

112. In terminating Plaintiff's employment, Defendant willfully and unlawfully

retaliated against Plaintiff's protected activity, i.e., opposing the employment discrimination he was being subjected to.

113. The aforementioned acts of Defendants constitute unlawful discriminatory retaliation against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3 *et seq*.

114. As a direct and proximate consequence of Defendants' intentional, unlawful, and discriminatory employment policies and practices, Plaintiff has suffered monetary damages, including, but not limited to, a loss of income, including past salary, future salary, and company-sponsored benefits.

115. As a direct and proximate consequence of Defendants' intentional, unlawful, and discriminatory employment policies and practices, Plaintiff has suffered, and continues to suffer, non-monetary damages, including, but not limited to, mental and physical pain and suffering, in violation of Plaintiff's human rights under the law.

## THIRD CAUSE OF ACTION
**(Race Discrimination In Violation of 42 U.S.C. § 1981)**

116. Plaintiff repeats and realleges all of the above preceding paragraphs above as though fully set forth herein.

117. As a person of Indian race, Plaintiff belongs to a minority group and as such is a member of a protected class under Section 1981.

118. A valid contract of employment existed between Plaintiff and Defendant.

119. Plaintiff was qualified for his position with Defendants and at all times relevant herein, successfully performed the duties of his position as Retail Manager.

120. Defendants repeatedly subjected Plaintiff to racial and ethnic discrimination based

upon his Indian race.

121. Defendants intentionally discriminated against Plaintiff because of his race.

122. Such discrimination was effectuated both through the frequent and persistent degrading and harassing verbal comments made by Roux to Plaintiff as well as the denied and discouraged family leave, all of which Plaintiff was subjected to even though other non-Indian employees of Morrison were not.

123. The foregoing acts of Defendants constituted unlawful discrimination in violation of the Section 1981 because they would not have engaged in such unlawful conduct but for Mr. Kotian's race and ethnicity.

124. As such, Plaintiff is entitled to relief in an amount not readily ascertainable to Plaintiff but to be determined after a full and fair hearing of the merits of Plaintiff's claims at trial.

### FOURTH CAUSE OF ACTION
**(Discrimination In Violation of FMLA)**

125. Plaintiff repeats and realleges all of the above preceding paragraphs above as though fully set forth herein.

126. At all times relevant herein, Plaintiff was an "eligible employee" within the meaning of the Family Medical Leave Act, 29 U.S.C. § 2601 ("FMLA").

127. At all times relevant herein, Defendants were "covered employers" within the meaning of the FMLA.

128. By the actions described above, among others, Defendants violated the FMLA by unlawfully interfering with, restraining, or denying the exercise of Plaintiff's rights by, *inter alia*, retaliating against him through harassment and unfair disciplinary actions after he availed

himself of his right to leave under the FMLA and, later, by terminating his employment right after he took the remainder of his leave to care for his son, an action that would clearly deter employees from exercising their rights under the FMLA.

129. As a direct and proximate result of Defendants' unlawful conduct in violation of the FMLA, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Arun Kotian, while reserving the right to seek additional damages and plead additional causes of action as may become known or available, demands applicable judgment against Defendants Morrison Management Specialists and Compass Group North America (a/k/a Compass Group USA), as follows:

A. A declaratory judgment in favor of Plaintiff against Defendants, declaring that Defendants violated Title VII by discriminating and retaliating against Plaintiff on the basis of his race, national origin, ethnicity, and ancestry;

B. A declaratory judgment in favor of Plaintiff against Defendants, declaring that Defendants violated Section 1981 by discriminating and retaliating against Plaintiff on the basis of his race and ethnicity;

C. A declaratory judgment in favor of Plaintiff against Defendants, declaring that Defendants violated the FMLA;

D. On all applicable causes of action, back pay and benefits and front pay and benefits, compensatory, and treble damages and punitive damages;

    E.    Reasonable attorneys' fees and costs;

    F.    Such other and further relief as this Court deems just and proper.

Dated: March 16, 2023
      New Yok, New York

                              **THE BOYD LAW GROUP, PLLC**

                              By: /s/ *Patrick J. Boyd*
                              Patrick James Boyd, Esq. (CT29091)
                              68 Southfield Avenue
                              Two Stamford Landing, Suite 100
                              Stamford, CT 06902-7223
                              (203) 921-0322 (office)
                              (212) 867-5068 (direct dial)
                              (203) 975-1110 (facsimile
                              pboyd@theboydlawgroup.com
                              *Attorneys for Plaintiff*